UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA SYDOROWITZ, individually and on behalf of all other persons similarly situated,<br><br>            Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK,<br><br>            Defendant. | CIVIL ACTION<br>CASE NO: 20-CV-9233 (JPO)<br><br>**ACTION UNDER**<br>**29 U.S.C. § 203** *et seq.*<br><br>**FIRST AMENDED**<br>**COMPLAINT** |

Named Plaintiff, LISA SYDOROWITZ on behalf of herself and all other persons similarly situated (collectively the "Plaintiffs"), employees currently or formerly employed by The City of New York ("Defendant") by and through their attorneys, Virginia & Ambinder, LLP, allege as follows:

## NATURE OF ACTION

1. This action is brought pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 207 and 216(b) to recover earned but unpaid overtime compensation owed to the Named Plaintiffs and members of the Putative Collective for services performed while employed by Defendant.

2. Beginning in approximately November of 2017 and continuing to the present, Defendant engaged in a policy and practice of failing to pay Plaintiff and others similarly situated overtime at the proper rate for hours worked in excess of forty (40) hours per week.

3. The Named Plaintiff has initiated this action on behalf of herself and a putative collective comprised of herself and all persons similarly situated to recover the overtime compensation that they were deprived of, plus interest, damages, attorneys' fees, and costs.

1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims in this action, pursuant to the provisions of 28 U.S.C. §§ 1331, 1337, and 1343.

5. This Court has subject matter jurisdiction over Plaintiffs' claims under the FLSA, pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the Defendant's principal place of business is in this district.

7. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

8. Named Plaintiff Lisa Sydorowitz is a resident of the State of New York, and a member of District Council 37 of the American Federation of State, County and Municipal Employees, Social Services Employees Union Local 371.

9. Plaintiff Sydorowitz has been employed by the New York City Department of Social Services ("NYC SS") since approximately October 2002.

10. Plaintiff Sydorowitz worked as a Juvenile Counselor from 2002 until 2018. In 2018 Ms. Sydorowitz was promoted to Associate Youth Development Specialist I. In November 2019 she was again promoted to Associate Youth Development Specialist II.

11. Each similarly situated Plaintiff is an "employee" as contemplated by the FLSA, 29 U.S.C. § 203(e).

12. Defendant, The City of New York, is a municipal corporation duly organized and existing under the Constitution and laws of the State and City of New York.

13. Defendant, The City of New York, is a judicial entity amenable to suit under the FLSA as it is, and was at all relevant times, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. §203(x).

14. Pursuant to N.Y.C. Charter § 396, the City of New York is the proper Defendant in this action.

15. At all relevant times, members of the putative collective were members of AFSCME District Council 37 Professional Division.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16. This action is properly maintainable as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

17. This action is brought on behalf of Plaintiff and a putative collective consisting of similarly situated employees who, as members of AFSCME District Council 37 Professional Division, performed work for Defendant at any time since November 4, 2017 (the "Putative Collective"). The proposed Putative Collective does not include members of AFSCME District Council 37 Professional Division classified as Addiction Counselor, Associate Fraud Investigator, Fraud Investigator, Caseworker, Child Protective Specialist Supervisor Child Welfare Specialist Supervisor, Community Associate and Community Coordinator

18. Plaintiff and the Putative Collective are non-exempt employees eligible to be paid for every hour worked including overtime compensation for those hours worked over forty in a consecutive seven day week.

19. Plaintiff and potential plaintiffs who elect to opt-in as part of the collective action are all victims of the Defendant's common policy and/or plan to violate the FLSA by failing to provide the correct overtime wages at a rate of one and one half times their regular hourly rate of pay,

inclusive of paid differentials and other payments required to be included in the calculated "regular rate" pursuant to 29 CFR §§ 778.200 *et seq.*, for all time worked in excess of forty (40) hours in any given week pursuant to 29 U.S.C. § 207.

20. Upon information and belief, Defendant uniformly applies the same unlawful employment policies, practices, and procedures to all members of the Putative Collective.

21. The putative collective is so numerous that joinder of all members is impracticable. Although the precise number of putative collective members is unknown, upon information and belief, the size of the Putative Collective is believed to be in excess of 500 individuals. In addition, the names of all potential members of the putative collective are not known.

22. The questions of law and fact common to the putative collective predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to: whether Defendant failed to pay the Plaintiffs and members of the putative collective their earned overtime wages, at the full rate of one and one half the times the regular rate of pay inclusive of all differentials and other payments required to be included in the calculated "regular rate" pursuant to 29 CFR §§ 778.200 *et seq*.

23. The claims of Plaintiff are typical of the claims of the Putative Collective.

24. Plaintiff and her counsel will fairly and adequately protect the interests of the putative class. The Plaintiff has retained counsel experienced in complex wage and hour class action litigation.

25. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy. The members of the putative collective lack the financial resources to adequately prosecute separate lawsuits against Defendant. A collective action will

also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendant's policies and practices.

## **FACTS**

26. Pursuant to the FLSA, 29 U.S.C. 207, "no employer shall employ any of their employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives overtime compensation for their employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

27. Further, pursuant to 29 U.S.C. § 203(d), an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

28. Plaintiffs are presently employed or were previously employed by Defendant City of New York at any time between November 4, 2017 and the present.

29. Plaintiff and other members of the Putative Collective are "employees," within the meaning contemplated in the FLSA, 29 U.S.C. § 203(e).

30. Defendant is an "employer" within the meaning contemplated in the 29 U.S.C. § 203(d), and consequently are liable for violations of the FLSA.

31. On information and belief the Named Plaintiff and members of the Putative Collective are paid certain bonus compensation above their base hourly rate of pay such as longevity pay after a certain amount of years in service, night-shift differentials, assignment differentials, and other bonus compensation.

32. Defendant has engaged in a pattern and practice of failing to ensure that Plaintiffs received payment for all overtime hours worked in any given week, at time and one-half their regular rate of pay, inclusive of earned differentials and other bonus compensation.

33. Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and its implementing regulations, *see e.g.* 29 C.F.R. § 778.208 *et seq.*, differentials and other payments must be included as part of Plaintiffs' "regular rate" of pay for purposes of calculating overtime compensation.

34. However, Defendant does not include earned differentials and other covered payments when calculating Plaintiffs' regular hourly rate of pay, which in turn results in Plaintiffs being paid at an incorrect time and one-half overtime rate.

35. Plaintiffs' overtime rates are miscalculated, and Plaintiffs are not compensated at the full rate of one- and one-half times their regular rate of pay inclusive of the paid differentials and other covered payments.

36. Named Plaintiff Sydorowitz often worked more than forty (40) hours in a given week.

37. Named Plaintiff Sydorowitz did not receive proper overtime payments at a rate of time and one half her regular rate of pay inclusive of earned differentials and other covered payments.

38. As an example, Sydorowitz' paystub, dated March 6, 2020 (the "Paystub," a copy of which is annexed hereto as "Exhibit A"), exemplifies how she was specifically underpaid by Defendants' practice of not paying overtime rates that included differential payments.

39. Upon information and belief, Sydorowitz' paystub reflects combined regular time payments for two weeks under the column entitled "AMT. EARNED THIS PER.", and overtime and night shift differentials which were separated into the first week of a given overtime pay period (in a column on the Paystub entitled "AMT. EARNED PRIOR PER.") and the second week of a given overtime pay period (in a column on the Paystub entitled "AMT. EARNED THIS PER.").

40. The Paystub reflects 70 hours of "REGULAR PAY" reflecting a total gross amount earned of $3,072.81. *See* Exhibit A. This reflects payment for two weeks of Sydorowitz' regularly scheduled 35-hour workweek. Dividing $3,072.81 by 70 yields a regular base hourly rate of $43.90 per hour.

41. The Paystub further reflects a line labelled "ADD 15MIN/DY" with a total payment of $109.74, reflecting an additional 2.5 hours of pay (15 minutes per day for each of the ten days in the two week pay period) at her regular rate of $43.90 per hour. This line item reflects an additional 2.5 hours of pay at straight-time over the two week pay period, on top of the 70 hours of regular time pay reflected in the "REGULAR PAY" line item.

42. The Paystub further reflects a line labelled "PAID OVERTM" with a total amount earned of $411.49 for 7:00 hours of overtime work over and above the regular time work, which is listed under the "AMT. EARNED PRIOR PER." column as having been earned in the first week of the overtime pay period. Dividing $411.49 by 7 yields a rate of pay for "overtime" work of $58.78.

43. Sydorowitz' base hourly rate of $43.90, multiplied by 1.5, would yield a calculated base overtime rate of $65.85.

44. On its face, the calculated $58.78 per hour rate of "overtime" pay is less than time-and-one-half the regular $43.90 rate, or $65.85 per hour.

45. However, Sydorowitz received a number of differentials which, pursuant to 29 C.F.R. § 778.208, "must be totaled in with other earnings to determine the regular rate on which overtime pay must be based."

46. Specifically, Sydorowitz received $166.81 in longevity differentials designated on the Paystub as "SVC/LONG/ED"; $26.32 assignment differentials designed on the Paystub as

"ASSIGN DIFF"; $20.54 in recurring incremental payments designated on the Paystub as "RIP"; and $5.88 in night shift differentials designated on the paystub as "HR NT DIFF."

47. In accordance with 29 C.F.R. §§ 778.207(b), 778.208, and 778.209(a), these payments "must be included in computing [her] regular hourly rate of pay and overtime compensation. No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period. The amount of the bonus is merely added to the other earnings of the employee… and the total divided by total hours worked." 29 C.F.R. § 778.209(a).

48. With the exception of the night shift differential, which covers only one week of pay, each of the other differentials covers two weeks of pay. As such, the $166.81 in longevity differentials, $26.32 in assignment differentials, and $20.54 in recurring incremental payments must be added together to total $213.67 in two-week differential payments, and then divided by two to arrive at $106.84 per week for those differentials. In addition to the $5.88 in night shift differentials, the total one-week payment attributable to differentials which must be included in the regular rate of pay for purposes of overtime pay calculation is $112.72.

49. In the workweek in question, Sydorowitz worked 35 regularly scheduled hours; 1.25 hours of the "additional 15 minutes per day," and 7 hours of "overtime," for a total of 43.25 hours of work. Dividing the $112.72 in differential payments which must be included in the base rate of pay for purposes of calculating overtime by 43.25 hours, Sydorowitz' regular rate of pay should have been increased by ($112.72 / 43.25 =) $2.61 per hour, on top of her regular $43.90 rate of pay, for a total "regular rate" of pay of $46.51 per hour, as defined in 29 C.F.R. § 778.209.

50. As such, Sydorowitz' overtime rate of pay should have been time-and-one-half of $46.51 per hour, or $69.77, far in excess of the calculated $58.78 rate of overtime pay reflected on the Paystub.

51. Throughout the relevant period, Defendant has undertaken a willful policy and practice of violating the FLSA by failing to pay Plaintiffs overtime at time and one-half their regular rate of pay for all hours worked over 40 in a week, by failing to calculate workers' "regular rate" of pay in accordance with the requirements of 29 C.F.R. 778.200 *et seq.*

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT: INCORRECT OVERTIME RATE

52. Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs.

53. Defendant has repeatedly engaged in a pattern and practice of failing to pay Plaintiffs and other members of the Putative Collective all earned overtime wages at the rate of one and one half time the regular rate of pay.

54. Pursuant to 29 C.F.R. § 778.209, "[w]here a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation."

55. Differentials such as pro-rata differentials, longevity pay after a certain amount of years in service, night-shift differentials, assignment differentials, and other additional cash payments constitute bonus payments within the regular rate of pay, as defined in the FLSA, implementing regulations, and the cases interpreting the same.

56. Defendants paid overtime wages at rates which were less than those to which Plaintiff and others similarly situated were entitled to receive.

57. Defendant has violated the Fair Labor Standards Act by failing to pay all earned overtime wages, at the rate of one and one-half times their regular rate of pay, in weeks in which they worked over forty (40) hours.

58. The failure of Defendant to pay Plaintiffs and members of the Putative Collective their rightfully owed overtime compensation was willful.

59. By the foregoing reasons, Defendant is liable to Plaintiffs and members of the Putative Collective in an amount to be determined at trial, constituting liquidated damages in the amount equal to the amount of unpaid wages owed each pay period to each individual Plaintiff or opt-in Plaintiff, plus interest, attorneys' fees and costs.

**WHEREFORE**, the Plaintiffs demand judgment:

(1)   on their First cause of action, in an amount to be determined at trial, constituting the amount equal to the amount of earned but underpaid overtime wages each pay period to each individual Plaintiff or opt-in Plaintiff, plus interest, liquidated damages, attorneys' fees, and costs; and

(2)   any other and further relief the Court may deem appropriate.

Dated: New York, New York
April 9, 2021

VIRGINIA & AMBINDER, LLP

By: ___/s/Lloyd R. Ambinder, Esq._____
Lloyd R. Ambinder, Esq.
James Emmet Murphy, Esq.
Rachel R. Feingold, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080

*Attorneys Plaintiffs and the Putative Collective*